**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

STEVEN ZARETSKY and SUZANNE
ZARETSKY,

                           **Plaintiffs,**

                  - against -

GEMOLOGICAL INSITUTE OF
AMERICA, INC., et al.,

                           **Defendants.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/28/14

**OPINION AND**
**ORDER**

**14 Civ. 1113 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

          Steven Zaretsky ("Zaretsky") and his wife Suzanne bring this suit

against four companies in the diamond industry and the Gemological Institute of

America, Inc. ("GIA"), a nonprofit company, based on GIA's failure to return a

7.35 carat, pear-shaped diamond (the "diamond") that Zaretsky's jeweler delivered

to GIA for certification and appraisal.[1]  GIA is holding the diamond until its

ownership can be determined because it believes the same diamond was reported

------------------

[1]          Jurisdiction is premised on diversity of citizenship.

1

stolen nine years before it was purchased by Suzanne Zaretsky's father.

Consistent with claims of disputed ownership, plaintiffs bring claims for declaratory judgment and a writ of replevin against all defendants. But they also bring conversion, breach of fiduciary duty, and intentional infliction of emotional distress claims (the "tort claims") against GIA. GIA moves to dismiss the tort claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, GIA's motion to dismiss the tort claims is GRANTED.

## II.    BACKGROUND

### A.    Procedural History

This case was commenced on June 19, 2013, in the United States District Court for the District of New Jersey, and assigned to Judge Faith S. Hochberg. GIA moved to dismiss pursuant to both Rule 12(b)(6) and 12(b)(3). On February 20, 2014, Judge Hochberg granted GIA's motion pursuant to Rule 12(b)(3), without deciding GIA's motion under Rule 12(b)(6). Instead of dismissing the case, Judge Hochberg transferred it to this District pursuant to Title 28, United States Code, section 1406.

On April 16, 2014, plaintiffs sought leave to file a first amended complaint ("Complaint"). I granted plaintiffs' motion with the understanding that GIA's pending motion under Rule 12(b)(6) would be applied to the first amended

2

complaint.  On April 23, 2014, plaintiffs filed the Complaint.

### B.    Facts[2]

####        1.    Delivery of the Diamond to GIA and GIA's Refusal to Return It to Plaintiffs

On December 10, 2012, Zaretsky brought the diamond to nonparty K & D Jewelers in order to have it appraised for insurance purposes.[3]  After K & D Jewelers recommended that Zaretsky obtain an appraisal and certification from GIA, Zaretsky authorized K & D Jewelers to submit the diamond to GIA.[4] Zaretsky was told that the certification process would take five days.[5]

On December 20, 2012, GIA informed Zaretsky that it would not release the diamond because a diamond with similar characteristics had been reported stolen in March 2003.[6]  Zaretsky demanded the return of the diamond, but

---

[2]        Unless otherwise indicated, the facts are drawn from the Complaint. Well-pleaded factual allegations are presumed true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, allegations in the Complaint that consist of conclusory statements or threadbare recitals of causes of action are not entitled to the presumption of truth.  *See Kirkendall v. Halliburton*, 707 F.3d 173, 175 n.1 (2d Cir. 2013); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

[3]        *See* Complaint ¶ 9.

[4]        *See id.* ¶¶ 10-11.

[5]        *See id.* ¶ 11.

[6]        *See id.* ¶¶ 12-13.

GIA refused based on its disputed ownership.[7]  GIA failed to release information about the party reporting the diamond as stolen unless the Zaretskys provided proof of their identities.[8]  Even after this information was provided, GIA refused to provide any information unless the Zaretskys signed a "'Consent and Release' Agreement."[9]

On February 13, 2013, GIA provided Zaretsky with a Consent Agreement and a Client Agreement.[10]  GIA indicated that the information Zaretsky requested would be given to him following execution of the agreements.[11]  Plaintiffs' counsel objected to the terms of the agreements,[12] and then negotiated with GIA for several weeks.[13]  The Complaint alleges that during this time, "GIA was less than forthcoming and deliberate in responding to requests, from counsel to the Zaretskys, as well as working to resolve the issues regarding the agreements."[14]

---

[7]     *See id.* ¶ 16.

[8]     *See id.*

[9]     *Id.* ¶ 17.

[10]    *See id.* ¶ 18.

[11]    *See id.*

[12]    *See id.* ¶ 19.

[13]    *See id.* ¶ 20.

[14]    *Id.* ¶ 21.

4

On March 27, 2013, Zaretsky forwarded an executed "Release Letter" to GIA.[15]  The Release Letter indicates that:

> [K & D] has submitted to GIA the above-referenced diamond (the "Submitted Stone") requesting GIA to perform GIA services. GIA has determined that the Submitted Stone is the same or substantially similar to a stone that was reported by one or more third parties (the "Reporting Parties") to GIA and/or law enforcement as lost or stolen (the "Reported Stone").  GIA refers to this as a "Competing Claim of Ownership Matter."[16]

On April 17, 2013, GIA issued a Notice of Competing Claims "identifying the party reporting the Stone as stolen as well as outlining terms to which the parties must conform in order for the Stone to be returned."[17]  The notice named Eve Goldberg as the party reporting the diamond as stolen.[18]  The plaintiffs believe that Eve Goldberg is representing a claim of ownership on behalf of the William Goldberg Diamond Corporation ("WGDC").[19]

### 2.  Plaintiffs' Understanding of GIA's Role

---

[15]  *See id.* ¶ 22.

[16]  3/12/13 Letter from GIA to K & D Jewelers and the Zaretskys, executed by K & D Jewelers and Zaretsky, Exhibit B to the Complaint ("Release Letter").  Although Zaretsky executed the Release Letter he struck out certain terms.

[17]  Complaint ¶ 23.

[18]  *See id.* ¶ 24.

[19]  *See id.*

During the course of their dealings with GIA, plaintiffs believed that GIA was acting as an "'escrow agent,' holding the [diamond], until the issue of the competing claim could be resolved."[20]   However, Zaretsky later learned that "William Goldberg had contributed a significant charitable gift to GIA, upon his demise, to create the William Goldberg Endowed Scholarship Fund."[21]   As of March 2005, WGDC had contributed $350,000 to GIA, an amount which has increased over time.[22]   As a result, Zaretsky "no longer feels that GIA is a disinterested party and further feels that GIA may be acting to subvert the Zaretskys's possessory rights [in] the stone in favor of the William Goldberg Diamond Corporation."[23]

### 3.    Ownership of the Diamond

On May 29, 2002, GIA certified a 7.44 carat, pear-shaped diamond for WGDC.[24]   On March 19, 2003, WGDC sent GIA a copy of a police report indicating certain items of jewelry, including a 7.44 carat stone, were stolen from

---

[20]   *Id.* ¶ 25.

[21]   *Id.* ¶ 26.

[22]   *See id.*

[23]   *Id.* ¶ 27.

[24]   *See* 5/29/02 GIA Report for William Goldberg, Exhibit G to the Complaint (the "WGDC Certification").

WGDC in January 2003.[25]  On March 24, 2003, GIA certified a 7.35 carat pear-shaped diamond for defendant Louis E. Newman, Inc.[26]  Suzanne Zarestky's father purchased the diamond on December 23, 2003, from defendant Stanley & Son Jewelers, Inc.[27]  Plaintiffs believe that Stanley & Son Jewelers obtained the diamond from Louis E. Newman.[28]

"GIA alleges that the [diamond] submitted by Plaintiffs is the 'same or substantially similar,' to a diamond which GIA certified to Defendant WGDC on May 29, 2002 . . . ."[29]  However, the Complaint states that "the measurements, weight, and other pertinent dimensions between" the stolen diamond and plaintiffs' diamond "are not, in fact, similar as GIA has represented."[30]

## III.   MOTION TO DISMISS STANDARD

### A.   Motion to Dismiss

---

[25]     *See* Complaint ¶ 32; 3/3/03 New York City Police Department Complaint faxed from WGDC to GIA on 3/19/03, Exhibit F to the Complaint (the "Police Report").

[26]     *See* 3/24/03 GIA Report for Louis E. Newman, Inc., Exhibit E to the Complaint.

[27]     *See* Complaint ¶¶ 28-29.

[28]     *See id.* ¶ 30.

[29]     *See id.* ¶ 34.

[30]     *Id.* ¶ 35.

In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[31] The court evaluates the complaint under the "two-pronged approach" set forth in *Iqbal*.[32] *First*, a court may "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[33] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[34] *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[35]

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[31]     *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007)).

[32]     *See Iqbal*, 556 U.S. at 679.

[33]     *Bigio*, 675 F.3d at 173 (citing *Iqbal*, 556 U.S. at 678).

[34]     *Id.*

[35]     *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).

for the misconduct alleged."[36]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[37]

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[38]  Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[39]

### B.    Pleading Requirements

#### 1.    Rule 8

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion,

---

[36]    *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[37]    *Id.*

[38]    *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *In re Citibank ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (quotation marks omitted)).

[39]    *Kirkendall*, 707 F.3d at 175 n.1 (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

the allegations in the complaint must meet the plausibility standard, as discussed above.[40]

## III.   APPLICABLE LAW[41]

### A.   Conversion

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."[42]  "'Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.'"[43]

---

[40]     *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

[41]     A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See, e.g.*, *Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005).  "While New York has adopted the 'paramount interest' test for choice-of-law questions, *lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances." *MWL Brasil Rodas & Eixos LTDA v. K-IV Enters. LLC*, 661 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (quotation marks omitted).  Here, the alleged torts took place in New York. *See Zaretsky v. Gemological Institute of America, Inc.*, No. 13 Civ. 3807, 2014 WL 683983, at *3 (D.N.J. Feb. 20, 2014) ("The parties do not dispute that the facts giving rise to this cause of action occurred, not in New Jersey, but in New York.").  Accordingly, the Court will apply New York law.

[42]     *Thyroff v. Nationwide Mutual Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).

[43]     *Edidin v. Uptown Gallery, Inc.*, No. 09 Civ. 7829, 2010 WL 1252666, at *2 (S.D.N.Y. Apr. 3, 2010) (quoting *Colavito v. N.Y. Organ Donor Network,*

Significantly, "'where one is rightfully in possession of property, one's continued custody of the property and refusal to deliver it on demand of the owner until the owner proves his right to it does not constitute a conversion.'"[44]  In addition, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."[45]

## B.    Breach of Fiduciary Duty

A claim for breach of fiduciary duty involves three elements: "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages."[46]  There are four elements essential to the establishment of a fiduciary relationship: "(1) [t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself."[47]  "Generally, where parties

---

*Inc.*, 8 N.Y.3d 43, 50 (2006)).

[44]     *Rezende v. Citigroup Global Markets, Inc.*, No. 09 Civ. 9392, 2010 WL 4739952, at *4 (S.D.N.Y. Nov. 18, 2010) (quoting *Trans-World Trading, Ltd. v. North Shore Univ. Hosp. at Plainview*, 882 N.Y.S.2d 685, 687 (2d Dep't 2009)).

[45]     *Command Cinema Corp. v. VGA Labs. Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006).

[46]     *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004).

[47]     *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 214-15 (S.D.N.Y. 2007) (quotation marks omitted).

11

deal at arms-length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."[48]

A fiduciary is obliged to exercise the "highest degree of good faith, honesty, integrity, fairness and fidelity" in its dealings with those to whom the duty is owed.[49]   It is "elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect."[50]   Once a fiduciary duty is established, it is so "inflexible" that the fiduciary must avoid not only self-dealing, but also "situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty."[51]

### C.   Intentional Infliction of Emotional Distress

Under New York law, intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional

---

[48]   *Id.* at 215 (quotation marks omitted).

[49]   *U.S. Ice Cream Corp. v. Bizar*, 659 N.Y.S.2d 492, 492 (2d Dep't 1997).

[50]   *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989).

[51]   *Id.*

distress."[52]  "To survive a motion to dismiss, '[t]he conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant.'"[53]  Generally, New York courts only sustain intentional infliction of emotional distress claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy."[54]

## IV.  DISCUSSION

The gravamen of this case is identifying the rightful owner of the

---

[52]     *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

[53]     *Harris v. Queens County Dist. Attorney's Office*, No. 08 Civ. 1703, 2009 WL 3805457, at *12 (E.D.N.Y. Nov. 9, 2009) (quoting *Lydeatte v. Bronx Overall Economic Development Corp.*, No. 00 Civ. 5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001)).  *Accord Stuto*, 164 F.3d at 827 ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.") (quotation marks omitted); *Conboy v. AT & T Corp.*, 84 F. Supp. 2d 492, 507 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001) ("Satisfying the first element of this claim is difficult, even at the pleadings stage."); *Kiser v. HSH Nordbank*, No. 09 Civ. 8849, 2010 WL 286647, at *2 (S.D.N.Y. Jan. 20, 2010) ("Indeed, the standard for the first element is so demanding that of the intentional infliction of emotional distress claims considered by the New York Court of Appeals, every one has failed because the alleged conduct was not sufficiently outrageous.") (quotation marks and alterations omitted).

[54]     *Stuto*, 164 F.3d at 828.

diamond.  Rather than focus on that goal, plaintiffs contend that GIA has

committed malfeasance, going so far as to assert a claim for intentional infliction

of emotional distress.  However, as the Release Letter and the Complaint indicate,

GIA is simply holding the diamond in a safe location pending a determination of

ownership by a court of competent jurisdiction.  Under these circumstances,

plaintiffs have failed to plausibly state a claim for conversion, breach of fiduciary

duty, or intentional infliction of emotional distress against GIA.

### A.    Plaintiffs' Fail to State a Claim for Conversion Against GIA

The Complaint states that Zaretsky authorized K & D Jewelers to

transfer the diamond to GIA.[55]  The Complaint does not allege that GIA asserts an

ownership interest in the diamond or that GIA has released the diamond to WGDC

or another party.  Instead, it states that after Zaretsky demanded the return of the

diamond, GIA refused because it believed the diamond may have been stolen, and

sought to establish a framework for the resolution of the disputed claim of

ownership.[56]

The Release Letter executed by Zaretsky illustrates the role of GIA

with respect to the diamond.  Zaretsky struck out the portion of the Release Letter

---

[55]    *See* Complaint ¶ 11.

[56]    *See, e.g., id.* ¶¶ 13-24.

14

agreeing to "be bound by certain of the provisions of GIA's Client Agreement and certain other terms and conditions set forth" on Exhibit A to the Release Letter (the "Terms and Conditions").[57]  However, the remaining portion of the Release Letter provides that:

> In connection with this Competing Claim of Ownership Matter, the Zaretsky's [stet] agree to: (i) . . . Exhibit A attached hereto (the **"Terms and Conditions"**), and (ii) the disclosure of the Zaretsky's [stet] [identifying information] . . . in order to resolve this Competing Claim of Ownership Matter.[58]

The Terms and Conditions indicate, among other things, that when there are competing claims of ownership, "GIA may . . . hold such Article for a reasonable period of time and inform the applicable law enforcement agency and the Reporting Party."[59]  Moreover, the Terms and Conditions contemplate that competing claimants will either settle the claim or commence suit to determine the ownership of the disputed item.[60]

Plaintiffs argue that GIA's "intentional refusal to return possession of

---

[57]     Release Letter.  The issue of whether the Release Letter is a binding contract is not before the Court.  However, the parties do not appear to contend that it is. *See, e.g.*, Brief in Support of the Gemological Institute of America, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) at 12.

[58]     Release Letter.

[59]     *Id.*

[60]     *See id.*

the Diamond to the Plaintiffs, despite demand and conclusive proof of ownership

and proof of chain of title . . . constitutes a *prima facie* case for conversion against"

GIA.[61]  However, this argument ignores the circumstances alleged in the

Complaint, as well as the Release Letter executed by Zaretsky, the WGDC

Certification, and the Police Report.  While the Complaint alleges plaintiffs *bought*

the Diamond, that is not the same as alleging conclusive ownership.  The Police

Report and WGDC Certification attached to the Complaint preclude an inference

that plaintiffs had clear title to the diamond.  Nor can I draw an inference that GIA

is liable for conversion based on its decision to direct Zaretsky to file suit in

replevin naming GIA as a party rather than simply turning the diamond over upon

request.

      In short, the Complaint and the documents attached to it indicate that

GIA is not claiming ownership of the diamond and is instead holding the diamond

until the disputed ownership can be resolved either through settlement or by court

order.  These allegations do not permit an inference that GIA has acted

unreasonably,[62] or wrongfully refused to return the diamond.[63]  Accordingly, the

---

[61]    Plaintiffs' Brief in Opposition to Defendant GIA's Motion to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) at 17.

[62]    The fact that GIA would require a claimant to sign legal documents,
particularly in the form of the Release Letter or the other agreements attached to
the Complaint, is not unreasonable.  It would be unreasonable *not* to attempt to

Complaint does not state a claim for conversion.

## B.   The Complaint Fails to State a Claim for Breach of Fiduciary Duty

The Complaint alleges that "[t]hroughout their interactions with GIA, the Zaretskys believed GIA to be a 'disinterested third-party' acting simply as an 'escrow agent,' holding the [diamond] until the issue of the competing claim could be resolved."[64] The Complaint states that GIA breached its fiduciary duty of good faith and fair dealing "as an alleged disinterested third-party . . . by neglecting to disclose [its] interest in the [diamond] as well as [its] status as an interested party with respect to [its] relationship to" WGDC.[65]

The breach of fiduciary duty claim fails for two reasons. *First*, the Complaint fails to adequately allege a fiduciary relationship between GIA and

---

define the terms of the parties' relationship under these circumstances.

[63]      *See Rezende*, 2010 WL 4739952, at *4 (rejecting plaintiff's argument that whether or not possession was authorized, defendant Citigroup's continued refusal to turn over funds to plaintiff constituted conversion because "Citigroup rightfully possessed the funds in the first instance. . . . Citigroup did not retain the funds for its own benefit, nor did it do so in order to deprive [plaintiff] of the funds. Rather, Citigroup was notified by multiple parties of competing claims to the funds, and concluded . . . to file a counterclaim in interpleader."); *Trans-World Trading, Ltd.*, 882 N.Y.S.2d at 687; *Mehlman Mgt. Corp. v. Fong May Fan*, 503 N.Y.S.2d 642, 643 (2d Dep't 1986); *Bradley v. Roe*, 282 N.Y. 525, 531 (1940).

[64]      Complaint ¶ 25.

[65]      *Id.* ¶¶ 46-47.

17

plaintiffs.  The Complaint alleges that Zaretsky authorized his jeweler to submit

the diamond to GIA for appraisal and certification.  This type of commercial

transaction ordinarily does not give rise to a fiduciary relationship absent

extraordinary circumstances.[66]  However, the Complaint's allegations, including

those concerning plaintiffs' negotiations with GIA, do not describe extraordinary

circumstances sufficient to permit an inference of a fiduciary relationship between

GIA and plaintiffs.  Instead, the Complaint describes what appears to be a bailee-

bailor relationship between the parties.[67]  Typically, however, a bailee only owes a

---

[66]    *See Manhattan Motorcars, Inc.*, 244 F.R.D. at 215.

[67]    The Complaint refers to GIA as an "escrow agent."  *See* Complaint ¶
25.  "'To create an escrow agreement under New York law, there must be a[n] [ ]
agreement under which the grantor deposits property with and relinquishes control
to an [escrow agent] with the subsequent delivery of the property by the [escrow
agent] to the grantee conditioned upon the happening of some event.'"  *Anwar v.
PAAM Group, Inc.*, No. 12 Civ. 3420, 2014 WL 241041, at *4 (S.D.N.Y. Jan. 22,
2014) (quoting *In re AppOnline.com, Inc.*, 315 B.R. 259, 274 (Bankr. E.D.N.Y.
2004) (quotation marks omitted) (alterations in original).  However, the Complaint
does not allege facts sufficient to support the inference that an escrow agreement
was created, much less whether such agreement gave rise to a specific fiduciary
duty that was breached by GIA. *See Gianoukas v. Campitiello*, No. 09 Civ. 1266,
2009 WL 3270808, at *3 (S.D.N.Y. Oct. 13, 2009) ("The Amended Complaint
refers to Levy and Boonshoft as 'escrow agents.'  But, just as calling an act an
escrow does not make it such, calling Levy and Boonshoft escrow agents does not
mean they were indeed escrow agents.") (quotation marks, citations, and
alterations omitted).

duty of ordinary care in dealing with the property entrusted to it.[68]

Second, even assuming GIA owed a fiduciary duty to plaintiffs, the Complaint's allegation that WGDC made over $350,000 in contributions to GIA, a nonprofit corporation, is not, together with the other allegations in the Complaint, sufficient to support a claim for breach of fiduciary duty. Said another way, the suggestion that GIA is actually acting on behalf of WGDC is not supported by the allegations in the Complaint. It is common sense that non-profit corporations[69] such as GIA receive contributions from a number of businesses within the industry.

However, the Complaint does not allege that WGDC made this donation in secret[70] or that WGDC is the only diamond or jewelry business that has made contributions to GIA. The Complaint also does not allege that plaintiffs were

---

[68]   See Snyder v. Four Winds Sailboat Centre, Ltd., 701 F.2d 251, 252-53 (2d Cir. 1983).

[69]   See Complaint ¶ 3.

[70]   In fact, GIA's receipt of WGDC's contribution was publicly disclosed as evidenced by the document announcing the contribution attached to the Complaint. In addition, "[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" Doron Precision Sys., Inc. v. FAAC, Inc., 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (quoting Fed. R. Evid. 201(b)). GIA's website lists not only WGDC's contribution, but hundreds of donations from jewelers and similar businesses, ranging from $5 million to $10,000. See www.gia.edu/gia-support-donate-financial-contributor.

required to enter into agreements with GIA and that WGDC was not. GIA does not claim an interest in the diamond and did not turn the diamond over to WGDC. Instead, GIA invited plaintiffs to name them as a party in a suit to establish the ownership of the diamond. Accordingly, the Complaint does not state a claim for breach of fiduciary duty.

### C.   The Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress

To satisfy the first prong of a claim for intentional infliction of emotional distress, the Complaint must permit an inference that GIA engaged in outrageous conduct. The Complaint's allegations fall far short of alleging such conduct. "However unpleasant [GIA's] alleged actions may have been for plaintiff[s], none of the alleged actions was remotely outrageous enough to state a cause of action for intentional infliction [of emotional distress], even at the pleadings stage."[71] Accordingly, the Complaint fails to state a claim for intentional infliction of emotional distress.

## V.   CONCLUSION

For the foregoing reasons, GIA's motion to dismiss the tort claims against it is GRANTED. A conference is scheduled for May 9, 2014 at 4:30 p.m.

---

[71]   *Kiser*, 2010 WL 286647, at *2.

20

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          April 28, 2014

21

-Appearances -

**For Plaintiffs:**

William I Strasser, Esq.
Gregory D. Emond, Esq.
Strasser & Associates, P.C.
7 East Ridgewood Avenue
Paramus, NJ 07652
(201) 445-9001
Fax: (201) 445-1188

**For Defendant GIA:**

Capricci Bilandal, Esq.
DLA Piper LLP US
300 Campus Dr., Suite 100
Florham Park, NJ 07932
(973) 520-2550