UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

STEVEN ZARETSKY and SUZANNE
ZARETSKY,

                      Plaintiffs,

                     - against -

THE WILLIAM GOLDBERG DIAMOND
CORPORATION, STANLEY & SONS, INC.,
and JOHN DOES (1-5), and ABC
CORPORATIONS (1-5),

                      Defendants.

------------------------------------------------------------- X

OPINION AND ORDER

14 Civ. 1113 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     INTRODUCTION

        This case concerns the ownership of a 7.44 carat pear-shaped diamond,[1] which is currently being held by the Gemological Institute of America ("GIA"), pending determination of title. In February 2003, the owner of the

---

[1]     Familiarity with the procedural history of this case is presumed and will not be repeated here. *See Zaretsky v. Gemological Institute of America, Inc.*, No. 14 Civ. 1113, 2014 WL 1678990 (S.D.N.Y. Apr. 28, 2014); *Zaretsky v. William Goldberg Diamond Corp., et al.*, No. 14 Civ. 1113, 2014 WL 4160232 (S.D.N.Y. Aug. 18, 2014).

diamond — the William Goldberg Diamond Corporation ("WGDC") — consigned it, along with other items, to Derek Khan, a well-known celebrity fashion stylist.[2] The purpose of the consignment — which reflected an ongoing arrangement between Khan and WGDC,[3] and between Khan and other established jewelers[4] — was for Khan to "adorn[] his celebrity clients" with high-end jewelry,[5] in preparation for "special events and fashion shoots."[6] The arrangement was governed by a Consignment Agreement, which made clear that Khan had no freestanding authority to "sell, pledge, hypothecate, or otherwise dispose of the [diamond]," but that he *could* sell the diamond "if and when [he] . . . received from [WGDC] a separate invoice."[7] In other words, Khan was only authorized to sell the diamond if WGDC approved the sale, and set out specific terms, prior to any

---

[2] *See* Plaintiffs' 56.1 Statement of Material Facts ("Pl. 56.1"), ¶ 6; Defendant's Response to Plaintiffs' 56.1 Statement of Material Facts ("Def. 56.1"), ¶ 6.

[3] *See* Pl. 56.1 ¶ 4; Def. 56.1 ¶ 4. *See also* 10/27/14 Declaration of Eve Goldberg ("Goldberg Decl."), ¶¶ 25-26.

[4] *See* Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.

[5] Def. 56.1 ¶ 4.

[6] Goldberg Decl. ¶ 18.

[7] Consignment Agreement Between William Goldberg Diamond Corporation and Derek Khan ("Consignment Agreement"), Exhibit B to Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Mem."), at 1.

sale.

Typically, after WGDC consigned a piece of jewelry to Khan, he would "return the jewelry to WGDC . . . within a few days of the celebrity event."[8] After the February 2003 consignment, however, Khan failed to return the diamond in a timely manner, prompting WGDC to become suspicious and, eventually, file a police report.[9] On March 17, 2003, the diamond surfaced in the legitimate market, when Louis Newman — a New York diamond merchant — submitted the diamond to the GIA for certification,[10] which was issued on March 25, 2003.[11] In late 2003, the diamond was purchased by Stanley & Sons — another New York diamond merchant[12] — on behalf of Frank and Donna Walsh (the "Walshes").[13]

---

[8]   Goldberg Decl. ¶ 26.

[9]   See Pl. 56.1 ¶ 7; Def. 56.1 ¶ 7.

[10]   See Pl. 56.1 ¶ 9; Def. 56.1 ¶ 9.

[11]   See Pl. 56.1 ¶ 12; Def. 56.1 ¶ 12.  In addition to its police report on March 19, 2003, WGDC also notified the GIA that the diamond had been stolen. This was two days *after* Newman submitted the diamond for certification. The similarity between the diamond submitted by Newman, and the diamond reported stolen by WGDC, went undetected at the time that the GIA issued its certification. *See* Pl. 56.1 ¶ 11; Def. 56.1 ¶ 11.

[12]   *See* 10/15/14 Affidavit of Paul Cohen, Owner of Stanley & Sons Jewelry, ¶¶ 3-5.

[13]   *See id.* ¶ 4. *See also* Pl. 56.1 ¶ 14; Def. 56.1 ¶ 14.

Some years later, the Walshes conveyed the diamond to plaintiffs, their children.[14]

WGDC argues that because Khan stole the diamond, he could not hold title in the diamond — nor transfer title to it — as a matter of law. Therefore, WGDC argues that it is the rightful owner of the diamond. On the other hand, plaintiffs argue that Khan was not a thief, but rather an entrusted merchant who held "voidable title" in the diamond — and was therefore capable of transferring title — under the Uniform Commercial Code ("UCC"). When the Walshes purchased the diamond in 2003, plaintiffs argue that their parents acquired good title to the diamond, which was subsequently transferred to them. Therefore, plaintiffs contend that WGDC is no longer the owner of the diamond as a matter of law. In the alternative, plaintiffs argue that even if WGDC's legal theory is correct, any replevin action is barred by the doctrine of laches, due to needless and prejudicial delay.[15]

---

[14] See Pl. 56.1 ¶ 16.

[15] Because I conclude that plaintiffs prevail on the merits, there is no need to resolve their laches argument. It bears noting, however, that the short span of time between Khan's absconding with the diamond — in February 2003 — and the Walshes' purchasing the diamond — in December 2003 — makes it difficult to satisfy the "prejudice" prong of laches. Even assuming, *arguendo*, that plaintiffs are correct that WGDC "failed to exercise any form of reasonable diligence in attempting to locate the diamond [] after March 2003," it is not clear that greater "diligence" would have made a difference. Pl. Mem. at 22. Once Newman came into possession of the diamond — less than a month after WGDC lost it — seeking replevin against Khan would have been futile. And once the Walshes purchased

Both sides moved for summary judgment on their respective legal theories. For the reasons set forth below, plaintiffs' motion is GRANTED, and WGDC's is DENIED.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"[16] Accordingly, summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[17]

## III. APPLICABLE LAW

---

the diamond, a replevin action (like this one) would have posed to plaintiffs, or to their parents, exactly the same risk that the action poses today — the prospect of being stripped of valuable property that was acquired in good faith. After the disappearance of the diamond, WGDC hired an investigator, notified the police, and reported the diamond stolen to the GIA. That WGDC failed to do more than this within ten months — after receiving no indication from the GIA that the report matched any diamonds currently in circulation — hardly qualifies as "slumbering on [its] rights." Black's Law Dictionary 875 (6th ed. 1990).

[16] *Whethers v. Nassau Healthcare Corp.*, No. 13 Civ. 2991, 2014 WL 4637215, at *1 (2d Cir. Sept. 18, 2014) (*citing Matsushida v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[17] *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014).

Under New York law,[18] "[u]nlike a thief, an entrustee" — *i.e.*, someone to whom property has been entrusted by its owner — "has voidable, as opposed to void, title, and therefore can pass good title to a third party."[19] Section 2-403(2) of New York's UCC provides that "[a]ny entrusting of . . . goods to a merchant who deals in goods of that kind gives [the merchant] power to transfer all rights of the entrustor to a buyer in the ordinary course of business." In other words, if an owner entrusts his property to a merchant, he is estopped from seeking replevin, down the line, against a good faith purchaser for value — even if the sale was the product of "fraud punishable as larcenous under the criminal law."[20]

The purpose of the merchant entrustment rule is to "enhance the reliability of commercial sales by merchants who deal in the kind of goods sold by shifting the risk of resale to one who leaves his property with [a] merchant."[21] Put

---

[18] *See Ash v. Richards*, No. 13 Civ. 3736, 2014 WL 3397780, at *1 (2d Cir. July 14, 2014) ("because this is a diversity action," the Court applies the law of "the forum in which [it] sits" — here, New York).

[19] *Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381, 2005 WL 2840330, at *5 (S.D.N.Y. Oct. 28, 2005) (applying New York law).

[20] N.Y. U.C.C. § 2-403(1).

[21] *Graffman v. Espel*, No. 96 Civ. 8247, 1998 WL 55371, at *3 (S.D.N.Y. Feb. 11, 1998) (applying New York law).

otherwise, the rule is meant to protect "buyers in the ordinary course of business"[22] by making owners — not purchasers — shoulder the financial risk associated with fraudulent transactions. If an owner "knowingly delivers [] property into the possession of a merchant," he "assumes the risk of the merchant's acting unscrupulously by selling the property" — without the owner's consent — "to an innocent purchaser."[23] This puts the onus on owners to carefully "select the merchant to whom [they] entrust[] [their] property."[24]

The applicability of the entrustment rule depends on whether an entrustee is a "merchant," which the UCC defines in two ways. *First*, an entrustee is a "merchant" if he "deals in goods of the kind."[25] *Second*, an entrustee is a merchant if "by his occupation," he "holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction."[26]

---

[22] This is a term of art used in the UCC. *See* N.Y. U.C.C. § 2-104(1) (defining "buyer in the ordinary course of business" as "a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind").

[23] *Graffman*, 1998 WL 55371, at *3

[24] *Porter v. Wertz*, 53 N.Y.2d 696, 698 (1981).

[25] N.Y. U.C.C. § 2-104(1).

[26] *Id.* Even if an entrustee does not hold *himself* out as having "knowledge or skill peculiar to the practices or goods involved in the transaction," he can still be considered a merchant if he "employ[s] [] an agent or broker or other

## IV. DISCUSSION

There is no dispute that WGDC voluntarily consigned the diamond to Khan,[27] or that the Consignment Agreement set the terms of their arrangement.[28] The parties' disagreement pertains to the *reason* for the consignment. WGDC maintains that it entrusted the diamond to Khan "for the sole and limited purpose of [Khan], a fashion stylist, adorning his celebrity clients."[29] Plaintiffs, in contrast, argue that Khan had conditional authority to sell the diamond, and that he therefore operated as a broker for WGDC.[30] If true, this would make Khan a "merchant" under the UCC's first definition: it would mean that Khan "deal[t] in" jewelry.[31]

The nature of Khan's and WGDC's relationship is a disputed question of fact — and not one that the Court is authorized, at this stage, to resolve.[32] But

---

intermediary" who has such knowledge or skill. *Id.* This alternative definition of merchant is inapplicable here, as neither party has offered evidence that Khan employed an agent or a broker.

[27] *See* Pl. 56.1 ¶ 6; Def. 56.1 ¶ 6.

[28] *See* Pl. 56.1 ¶ 5; Def. 56.1 ¶ 5.

[29] Def. 56.1 ¶ 4.

[30] *See* Pl. Mem. at 8.

[31] N.Y. U.C.C. § 2-104(1).

[32] On the face of it, the Consignment Agreement contemplates the possibility that Khan — subject to the WGDC's approval — will sell jewelry to his clients. *See* Consignment Agreement. The record suggests, however, that Khan

no such resolution is necessary, because even if WGDC is right about its relationship with Khan, he still qualifies as a "merchant" under the UCC's *second* definition. "By his occupation," Khan clearly "[held] himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction."[33] Therefore, the merchant entrustment rule applies, and WGDC is estopped from seeking replevin against plaintiffs.

WGDC offers two arguments against this construction of "merchant." *First*, it repeatedly emphasizes that Khan "was a fashion stylist, not a [jeweler]," so whatever his knowledge or skill regarding jewelry, it was not "by virtue of his occupation."[34] This argument fails. Put simply, fashion stylists often *do* — and the record makes clear that Khan, in fact, did — have "knowledge or skill peculiar to [jewelry]." At the time of the diamond's consignment, Khan made his living "preparing celebrities . . . for events and fashion shoots,"[35] a job that required him

---

never actually sold the jewelry that he was consigned by WGDC. *See* Goldberg Decl. ¶ 27. And it is unclear whether he ever sold jewelry consigned by other jewelers. The factual dispute, then, comes down to whether "dealing in" jewelry, within the meaning of the UCC, depends on the terms of the Consignment Agreement, or rather the established course of business between the parties.

[33] N.Y. U.C.C. § 2-104(1).

[34] Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Opp. Mem."), at 8.

[35] *Id.* at 2.

to "provide . . . jewelry to certain celebrities or other well-known individuals, for whom [he] was employed as [a] personal stylist."[36]  Obviously, "by [this] occupation," Khan must have "[held] himself out as having knowledge or skill" about jewelry — specifically, knowledge about jewelry as a category of accessory, and skill in the selection of jewelry for fashion purposes.  That is why WGDC (and others) consigned their jewelry to him.

*Second*, WGDC argues that Khan did not hold himself out as having the specific type of "knowledge or skill" necessary to make him a "merchant."[37]  According to WGDC,

> Khan was in no way involved in the diamond or jewelry industries, either at the wholesale or retail level.  He did not purchase, sell, or resell diamonds or other jewelry.  He was not a dealer in diamonds; nor did he otherwise engage in the selling purchasing, lending, or marketing of diamonds or other jewelry.[38]

But even if all this is true, nothing in the language of the UCC suggests that the phrase "knowledge or skill peculiar to the practices or goods involved in the transaction" necessarily refers to knowledge of, or skills related to, the *business* dimension of those "practices or goods."  If anything, the UCC's bifurcated

---

[36]   11/07/14 Declaration of Derek Khan, ¶ 4. *Accord* Goldberg Decl. ¶¶ 25-26.

[37]   *See* Opp. Mem. at 8-9.

[38]   *Id.* at 9.

definition of "merchant" cuts the other way. That the UCC differentiates between "deal[ing] in goods" and possessing "knowledge or skill [about] goods" suggests that the latter definition is not exclusively concerned with business knowledge.

Khan obviously had "knowledge [and] skill[s]" related to jewelry. Absent explicit guidance from New York courts, I conclude that Khan's particular type of "knowledge [and] skill[s]" — related to aesthetics, not business — is covered by the UCC's broad definition. WGDC has not identified any case that holds otherwise.[39] And more importantly, rejecting this broad definition would

---

[39] WGDC cites only two cases in support of its view, both from other jurisdictions — Tennessee and Texas — that have adopted identical versions of the UCC. In the first case, the Tennessee Court of Appeals remanded the question of whether defendant was a "merchant" back to the trial court, so it neither bolsters nor undermines WGDC's claim. *See Brooks Cotton Co. v. Williams*, 381 S.W.3d 414 (Tenn. Ct. App. 2012). In the second case, the Texas Court of Appeals held that a farmer *was* a merchant by virtue of his "knowledge or skill" related to wheat production. *See Nelson v. Union Equity Cooperative Ex.*, 548 S.W.2d 352, 356 (Tex. 1977). Addressing the "knowledge or skill" definition of merchant, the court held that a "reasonable person could expect an experienced wheat farmer to [have knowledge] . . . peculiar to the business of wheat farming and to [] wheat." Importantly as it relates to the instant case, the court found this to be true *independent of* the farmer's experience with selling wheat — he would have been a merchant, under the court's analysis, if he had never sold wheat. If anything, that holding cuts against WGDC's position. Furthermore, the only on-point authority from this District is similarly inconclusive — though it too leans in favor of plaintiffs, not WGDC. In *Brown v. Mitchell-Innes & Nash*, Judge Paul Crotty of this Court held (applying New York law) that art collectors could be "classif[ied] . . . as merchants" despite the fact that they "[did] not sell artwork," in light of their general "knowledge and experience in the art industry." No. 06 Civ. 7871, 2009 WL 1108526, at *7 (S.D.N.Y. Apr. 24, 2009).

undermine the spirit of the merchant entrustment rule, which aims to protect purchasers by "shifting the risk of loss through fraudulent transfer to the owner of the goods, who can select the merchant to whom he entrusts his property."[40] The rationale behind the rule, in other words, is to "enhance[] confidence in commercial transactions by protecting the innocent purchaser who buys from a merchant dealing in goods of that kind"[41] — which counsels in favor of giving "merchant" a broad definition, to the benefit of purchasers, not owners.

It is undisputed that plaintiffs came into the possession of the diamond innocently.[42] And it is also clear that if the merchant entrustment rule applies — to protect plaintiffs' innocent acquisition — WGDC will be left to bear an unfortunate liability. Such is the nature of a case like this, where the true perpetrator — Khan — is beyond the Court's grasp. There can be no doubt that Khan's actions were larcenous. However, because he falls within the broad definition of "merchant" set out in the UCC, his larceny did not preclude him from passing title. I conclude, therefore, that plaintiffs are the rightful owners of the diamond.

---

[40]  *Porter*, 439 N.Y.S.2d at 698.

[41]  *Brown*, 2009 WL 1108526, at *4.

[42]  *See* Pl. 56.1 ¶¶ 12-17; Def. 56.1 ¶¶ 12-17.

## V. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED, and WGDC's motion for summary judgment is DENIED. The Clerk of the Court is directed to close both motions (Dkt. Nos. 174 and 183).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         November 17, 2014

**-Appearances-**

**For Plaintiffs:**

William I. Strasser, Esq.
Gregory D. Emond, Esq.
Strasser & Associates, P.C.
7 East Ridgewood Avenue
Paramus, NJ 07652
(201) 445-9001

**For William Goldberg Diamond Corporation:**

Howard A. Wintner, Esq.
Katryna Dikansky, Esq.
The Abramson Law Group
12 East 41st Street 8th Floor
New York, NY 10017
(212) 686-4401